NEW YORK COUNTY—HON. EDWARD C. WEST, SURROGATE—July, 1862.

# DECKER *v.* MORTON.

*In the Matter of the final Settlement of the Estate of* GEORGE
H. POWELL, *deceased.*

An assignment by a married woman of all her interest in the estate of a deceased person, in consideration of the assignee's forbearing to arrest the assignor's husband for an embezzlement of his funds, and a promise to continue him in his employment, and pay his salary to her,—*Held,* void for want of a legal consideration. The fact that part of the consideration was legal, will not sustain the agreement.

An agreement to forbear arresting a person, will be presumed to mean either a criminal or civil arrest.

Proof of an earlier ceremonial marriage rebuts a presumption of marriage founded on reputation, cohabitation, and social recognition.

An assignee of the distributive share of one of the next of kin, having neglected to bring an action on the assignment, and left the administrator to settle his accounts with the assignor, cannot afterwards ask the surrogate to try its validity on the accounting of the administrator. (*Supreme Ct.;* INGRAHAM, J.)

On the accounting of the administrator of George H. Powell, one Decker presented an assignment executed by Mrs. Amelia D. Morton, who was (except for the assignment) entitled to a distributive share of the estate, transferring to him all her interest in the estate; and he claimed that her share be paid to him.

For several years prior to the assignment, Mr. Morton had been employed by Decker to sell merchandise to purchasers, and collect the price. To secure the amount of $1,394.58 thus collected, and another item of $98, lost by him, Mrs. Morton, at the request of her husband, made the assignment in question, on the agreement that Decker would forbear to arrest Morton, would continue him in his employment, and would pay his salary over to her instead of to him. The agreement was completed, and payments were made to Mrs. Morton, amounting to $800. On the return of

the citation, Mrs. Mary E. Gamble appeared and claimed a share in the estate of the deceased, as his second cousin. She was the daughter of John M. Stockbridge. Benjamin K. Stockbridge, a son of J. M. Stockbridge, also claimed a share in the estate. He gave evidence as to the general reputation in the family of a marriage between his father and Delia M. Bryant, and the recognition of the relationship between himself and the deceased, who was his father's cousin. He also proved, by witnesses, a general reputation of marriage between his father and mother, and gave in evidence the following memorandum, in his father's writing, as follows :

MONROE, February 1, 1846.

This is the thirty-fourth birth-day of my wife, Delia. We have passed many sunny days together; many bright days without a cloud; and, tho' poor in purse, we were rich in each other. She has saw the day clouded by intemperance and profanity; she has seen the sun of hope rise in all its glory and splendor; and, again, she has seen the black cloud of despair almost shroud it from her vision ; but her hope was in the living God, who would never leave nor forsake her. Dear one, may she forget all clouds and remember sunshine only, for she has been a bosom friend to me indeed. "If any be overtaken in a fault, forgive, as Christ also forgave us. Amen."

The following letter was read in evidence, to show reputation in the family.

———, March the 14, 62.

EVER DEAR NEPHEW :

I take my pen to answer your letter, which I received about an hour and a half ago. I was glad to hear from you. I began to think you had not got my letter, or was forgeting me. We are all well, except myself. I am not very ruged this winter, although I keep about. You wished me to give you all the information in regard to your father and mother's marriage together. They were married together in the year 1829, in the fall, October or November. Our family record

in our old bible, I think, was destroyed by fire when your mother was in Utica, at your aunt Leary Smith's. The reason I recollect so well when they were married, your grandfather Bryant, my father, died the 5th of January, 1830, about two months after they were married. Your mother was very young; I think she lacked about two or three months of seventeen years. When she was married I was about twelve years old. Your father lived with your grandfather for more than a year before they were married. He came to our house in pursuit of work. He worked a short time, and then your grandfather hired him for a year, for fifteen dollars a month. He stayed his time out, and they were shortly after married. A man by the name of Thorp took them for a ride, and they were married, returned home at knight, and the next day they started to go to live in Colebrook. Your dear mother I know was married lawfully to your father, as well as I know that I am in existence. I trust she was a true child of God. I must tell you I had a letter from Old Sheffield, Berkshire Co., the other day, from a cousin. She wished I would tell her where your aunt Lucy children and Delia's children were. I told her where you were, my dear Benjamin. If prosperity is yours, let the fear and love of God dwell in you, as one that loves you dearly. I beg of you, cleave to the Lord; let him guide you in all your ways. I feel I cannot give you up. Seek the Lord while he may be found; call uppon him while he is near. If temptation assail you, ask strength of the Lord; he knows how to succor those that are tempted. The love of money is the root of all evil, which some loveth, hath pierced themself through with many sorrows. If you are prospered, and have property fall to you, I hope you will put it right into a farm, or some little home. You will not regret it when you are old. Remember me to your wife and little one. May you long be spared to be a blessing to each other. Kiss your little one, for I hope to see you some day; and write soon.

Yours truly, from your aunt,

M. J.

Mrs. Gamble proved a ceremonial marriage between her mother and John M. Stockbridge, of a date some years earlier than his acquaintance with Miss Bryant. She gave in evidence a marriage certificate signed by Rev. Dr. Maclay, and the original parochial register kept by that clergyman, in the possession of his executors. It appeared that Stockbridge and her mother lived together for a number of years, and that he subsequently abandoned his home, some time before his alleged marriage with Miss Bryant.

JOHN N. LEWIS, *for Decker.*

I. The surrogate has not jurisdiction to inquire into the consideration of the assignment. It is valid on its face, imports a consideration, and was duly executed and delivered. He should recognize the assignee as owner of the fund, and leave Mrs. Morton to her action for money received. This is not a case of an executory contract. The assignment was absolute, and effected an immediate transfer of all Mrs. Morton's interest in the estate.

II. The chief objection urged to the assignment is, that it is an agreement to compound a felony, and, being prohibited, can constitute no consideration for the assignment.

III. It does not clearly appear that any facts alleged against Morton, if proved, amount to felony. (2 *Rev. Stat.*, 1 ed., 678, § 59.) 1. There is no strict proof that Morton was of the age of eighteen years at the time of the acts complained of. 2. Nor that he converted to his own use more than $25 at any one time. Embezzling $25 or under is not punishable by imprisonment in State Prison, and so is not felony. (2 *Rev. Stat.*, 1 ed., 678, § 59; *Id.*, 679, § 63; *Id.*, 690, § 1.) 3. Every presumption is in favor of innocence; and the claimants are entitled to the strictest construction of the evidence in their favor. (*Clayton* v. *Wardell*, 4 *N. Y.*, [1 Comst.], 230; *Best on Pre.*, 31 *Law Lib., N. S.*, 58.)

IV. It does not appear that Decker had knowledge of the facts constituting the acts of Morton a felony. Unless he knew all the facts showing the commission of the offence, he

is not within the prohibition.  (2 *Rev. Stat.*, 1 ed., 689, § 18.)
1. There is no strict proof that he knew Morton to be
eighteen years of age.   2. Or that he had misapplied a sum
exceeding $25 at once.

V. Granting that the release, if it rested solely on a prom-
ise not to institute criminal proceedings, was void, yet there
was sufficient consideration to support it, aside of such prom-
ise.   1. There was an agreement to continue Morton in em-
ployment.   2. Also to pay his salary to his wife, the contest-
ant.   3. And sufficient pecuniary consideration under this
stipulation is shown by the actual payment to the wife of an
amount far exceeding the value of her distributive share.

VI. There was no agreement to compound or conceal the
offence, if any had been committed.   1. There was no agree-
ment to abstain from a *criminal* prosecution.  This would
be essential.   In *Ward* v. *Lloyd* (6 *Mann. & Gr.*, 785), de-
fendant was plaintiff's clerk, and converted moneys collected.
Plaintiff *threatened* a prosecution, and defendant gave a bond
and warrant of attorney: the court could not set it aside,
because there was no proof of an agreement.   2. Since the
Code of Procedure, Decker had a civil remedy against
Morton for any moneys he might have appropriated.   This
remedy he could pursue unembarrassed by the existence
of the concurrent criminal remedy.   He had a perfect
right to compound or settle his civil action against him.
In *Keir* v. *Leeman* (6 *Q. B.*, 321), the prosecutor compro-
mised a prosecution for a riot.   It was held illegal, because the
offence was of a public nature.   The party might compro-
mise " all offences for which he might recover damages."   In
*Harding* v. *Cooper* (1 *Starkie, N. P.*, 467), it was held that
a stipulation to drop a prosecution was illegal, but if the
party compounds his *civil* rights only, it was not.   3. In
speaking of " arresting" Mr. Morton, Mr. Decker must be
deemed to have spoken of his own right to have him arrested
in a civil action, and not to the right of the *people* to have
him arrested in a criminal proceeding.   Language capable
of a twofold construction should be construed in favor of

innocence. (*Bank of Silver Creek* v. *Talcott*, 22 *Barb.*, 550; *Wilson* v. *Betts*, 4 *Den.*, 201; *McPherson* v. *Chrandal*, 24 *Wend.*, 25; *Smith* v. *Joyce*, 12 *Barb.*, 21; *Starr* v. *Peck*, 1 *Hill*, 270; *Rex* v. *Twyning*, 2 *Barnw. & Ald.*, 386. See *Rodwell* v. *Redge*, 1 *Carr. & P.*, 220; *Gleadow* v. *Atkin*, 1 *Carr. & M.*, 458.)

B. D. PENFIELD, *for Mrs. Morton.*

I. The surrogate cannot order the amount of Mrs. Morton's interest to be paid to the assignee, unless satisfied of the validity of the assignment. He cannot have, even were it not disputed, any knowledge of the assignment until it is produced in evidence before him; nor can he pronounce upon its validity until he has tried the question, by inspecting the paper and taking proof of its execution. Assuming, then, that the assignee has acquired a standing in this court, and that the surrogate rightfully received proof of his claim, how can it be consistently argued, that by reason of a want of jurisdiction over the subject-matter of the controversy, he was bound to exclude the evidence of the assignor in opposition? Either the surrogate has jurisdiction to determine all the rights involved in the controversy, or he has no jurisdiction. If he has no jurisdiction, the claimant has no standing in court, for he belongs to neither of the classes of persons entitled to share in the distribution of the estate. (See 3 *Rev. Stat.*, 5 ed., 182, § 78.)

II. The assignment is clearly illegal and void: for, 1. It was connected with and grew out of an illegal act. (2 *Kent's Com.*, 466; *Pratt* v. *Adams*, 7 *Paige*, 615; *Leavitt* v. *Palmer*, 3 *N. Y.*, 19.) 2. The consideration of the assignment was a promise not to prosecute Morton, who had been guilty of a felony, and was intended to defeat the object of the statute (3 *Rev. Stat.*, 5 ed., 969, § 18) prohibiting the composition of criminal offences. (*Nellis* v. *Clark*, 4 *Hill*, 424; *Chitty on Cont.*, 273; *Addison on Cont.*, 96; *Gray* v. *Hook*, 4 *Comst.*, 449; *Bell* v. *Leggett*, 3 *Seld.*, 176.) 3. It not only violates the statute before cited, but it is subversive of the

soundest principles of morals and public policy. (*Daimouth* v. *Bennett*, 15 *Barb.*, 540; *Steuben Co. Bank* v. *Mathewson*, 5 *Hill*, 249; *Story's Eq. Jur.*, § 249; *Callagan* v. *Hallett*, 1 *Cai.*, 104; *Reg.* v. *Best*, 2 *Mod.*, *C. C. R.*, 124; *Com.* v. *Pease*, 16 *Mass.*, 91; *Chitty on Cont.*, 582, 570.)

III. The promise to continue Morton in his employment, and to give to Mrs. Morton the control of his salary, was coupled with the promise not to prosecute him, and to conceal the embezzlement; and those promises taken together formed the consideration of the assignment. The agreement is entire, and is tainted with the illegality of the latter promise, and is therefore void. (*Addison on Cont.*, 147; 2 *Pars. on Cont.*, 380; *Rose* v. *Truax*, 21 *Barb.*, 361; *Burt* v. *Place*, 6 *Cow.*, 431.)

IV. Decker is concluded by the declarations made by him at the time of the transaction—to wit, that Morton had collected and wrongfully appropriated this $1,361.34, or in other words had embezzled it. He is now estopped from denying the truth of what he then asserted. The declarations were acted upon. The assignment was given in consequence of them. (*Greenl. Ev.*, § 207; *Dezzell* v. *Odell*, 3 *Hill*, 215; *Truscott* v. *Davis*, 4 *Barb.*, 495; *Martin* v. *Angell*, 7 *Id.*, 407; *Otis* v. *Sill*, 8 *Id.*, 102; *Welland Canal Co.* v. *Hathaway*, 8 *Wend.*, 483.) It is not material whether the declarations were true or false, they were believed and acted upon. (*Greenl. on Ev.*, § 208.)

V. If the claimant is now permitted to say that his declarations at the time of the transaction were false, the assignment is void for fraud. They cannot plead ignorance of the truth of the charges. It was their duty to know their truth before making them.

Moses Ely, *for B. K. Stockbridge.*

Walton & Shearman, *for Mrs. Gamble.*

The Surrogate.—The assignment alleged to have been made by Amelia D. Morton, herein, is void for want of a

legal consideration. And it is decreed that the residue of
the assets of the estate of George H. Powell, deceased—to
wit, the sum of four hundred and sixty-one dollars and
ninety-six cents—be distributed as follows; that is to say : to
Amelia D. Morton, cousin of said deceased, the sum of one
hundred and seventy-two dollars and thirty-four cents, which,
with the sum of one hundred and seventeen dollars and twen-
ty-three cents heretofore received by her, will be in full of
her distributive share from said estate on this accounting.

Benjamin K. Stockbridge is not entitled to any share in the
estate of the deceased, which must be divided equally, after
payment of expenses between Mrs. Morton and Mrs. Gam-
ble, allowing for payments already made to the former.

An appeal was taken from the surrogate's decree to the
Supreme Court (November Term, 1863), where an opinion
was delivered by Ingraham, J.

By the Court.—Ingraham, J.—On a final accounting be-
fore the surrogate, Mrs. Morton claimed, as one of the next
of kin, a distributive share of the estate ; and Decker claimed
the proceeds of such share under an assignment from Mrs.
Morton to him. The validity of the assignment was denied
by the defendant, and the surrogate decided that it was ille-
gal and void, and decreed payment to the defendant. From
this decree the plaintiffs appeal.

It is not clear that the surrogate had any jurisdiction to
try the question as to the validity of the assignment. The
proper course for the plaintiff (the assignee) was, to have
brought an action on the assignment in a court of law ; or to
have had a reference under the statute, and had the rights
of the parties there adjudicated. If they neglected to take
this course, and leave the administrator to settle his accounts
with the assignor, they cannot afterwards ask the surrogate
to try a question of this kind on the accounting.

But upon the merits, I think the surrogate, if he had juris-
diction, did not err. The assignment was made by the wife

to save her husband from prosecution, for what, if proved, would have amounted to a felony. It was given under a threat of prosecution, and to send the husband to prison if the assignment was refused. The suggestion, that the evidence was not sufficient to convict Morton, if on trial, and therefore not sufficient to affect the validity of the assignment, might be available under a different state of facts. In the present case, the execution of the assignment was obtained by the representations of the plaintiff that the offence had been committed, and that he would imprison Morton if the assignment was not executed. When the representations on which the paper was executed are such as to lead the party to act on the suggestion that a felony had been committed, the party making them is concluded as to the truth of such statements, and he cannot be allowed to sustain the validity of the assignment by alleging such declarations to be untrue. They were acted upon by the party who executed the assignment, and the truth of them cannot be denied.

It was urged, on the argument, that part of the consideration was legal, and therefore the contract could be enforced. But the contrary is the rule. In *Rose* v. *Truax* (21 *Barb.*, 361, 379), it was held that "where an entire agreement contains an element which is legal, and one which is void, being against public policy, the legal consideration cannot be seperated from that which is illegal and void."

Decree reversed, and case sent back to the surrogate to correct the accounting as above stated, with costs against plaintiffs.

SUTHERLAND and LEONARD, JJ., concurred.